**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Atlantic Spinal Care on assignment of M.G., | |
| *Plaintiff*, | Civ. No. 12-6759 (KSH) (CLW) |
| v. | |
| Aetna, | **OPINION** |
| *Defendant*. | |

**Katharine S. Hayden, U.S.D.J.**

I.      **Introduction**

Atlantic Spinal Care, a healthcare provider, has filed suit against Aetna,[1] alleging that Aetna underpaid it by $207,967.87 in benefits due under a patient's health benefit plan. Atlantic Spinal further contends that Aetna failed to provide certain documentation to it in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Atlantic Spinal claims standing to pursue the relief it seeks by virtue of an assignment from the patient, "M.G."

Aetna has moved for summary judgment on all counts. (D.E. 12.) Atlantic Spinal opposes, and has cross-moved to amend its complaint to add a claim for breach of fiduciary duty. (D.E. 15; D.E. 16.) For the reasons set forth below, Aetna's motion will be GRANTED, and Atlantic Spinal's cross-motion will be DENIED.

---

[1] Aetna asserts that the proper name for it is Aetna Life Insurance Company. *See* D.E. 1 ("Notice of Removal").

II.     **Background**

M.G. was enrolled as a member of ADP TotalSource, Inc.'s ERISA-governed group health benefit plan when he sought medical treatment by Atlantic Spinal to relieve back pain. (D.E. 12-3 ("Def.'s Stmt. of Material Facts" or "DSMF") ¶ 2; Def.'s App. in Supp. of Mot. Summ. J. ("App'x") at 15, 45, 222, 227.)[2]  M.G.'s plan is underwritten by Aetna [App'x at 118, 122], which describes itself as a benefit provider for the plan [DSMF ¶ 3].  Atlantic Spinal is an out-of-network provider under the plan, and treated M.G. on four occasions – October 4, 2010; October 18, 2010; November 18, 2010; and March 4, 2011.  (DSMF ¶¶ 4-5.)  M.G. was treated by two doctors affiliated with Atlantic Spinal, Kaixuan Liu, M.D., Ph.D., and Rae Aranas, M.D. (*See* App'x at 15, 45, 222, 227.)

For the October 4, 2010 procedure, an epidural steroid injection, Atlantic Spinal submitted a claim for payment of $7,400, consisting of two charges: $6,600 under code 64483 and $800 under code 77003.[3]  (DSMF ¶ 14; App'x at 220-22.)  Aetna paid a total of $136.57 on this claim: $109.84 on the first, and $26.73 on the other.  (App'x at 221.)  Aetna's explanation of benefits ("EOB") stated that M.G.'s plan "provides benefits for covered expenses based on recognized charges, as determined by Aetna, for the same service," and the charge submitted "exceeds that amount."  (*Id.*)  The EOB noted that "if there is additional information that should be brought to [Aetna's attention]," Atlantic Spinal should let it know.  (*Id.*)

---

[2] Aetna filed its appendix in four parts.  (*See* D.E. 12-5 to D.E. 12-9.)  For ease of reference, citations to the appendix use the page numbers inserted in the style of Bates stamps at the top of each page.

[3] The Court uses these codes for facilitating discussion of the background of Atlantic Spinal's claims; the meanings of the codes and the particular services to which they were attached are not relevant here except as specifically noted.

For the October 18, 2010 treatment, another epidural steroid injection, Atlantic Spinal submitted a claim in the amount of $4,100, consisting of an $800 charge under code 77003, and a $3,300 charge under code 64483.  (DSMF ¶ 15; App'x at 9, 15, 27.)  Aetna initially paid $109.84 on this claim toward the $3,300 charge, noting that the charge billed exceeded the recognized charge for the service.  (App'x at 9.)  It paid nothing toward the other charge.  (*Id.*)  A subsequent EOB referenced an inquiry about the $800 charge and the reprocessing of the charge billed at $3,300, but no additional payment resulted.  (*Id.* at 28.)  Following Atlantic Spinal's appeal [DSMF ¶ 16; App'x at 13], Aetna overturned its original payment determination, and stated that the services under the code for the $800 claim were eligible for payment.  (DSMF ¶ 17; App'x at 24.)  Following reprocessing, Aetna paid an additional $26.98 (including interest), and stated that the charge submitted exceeded the recognized charge for that service.  (*Id.* at 29; *see also* DSMF ¶ 18.)  Though Atlantic Spinal continued to pursue further payment, it appears to have been unsuccessful.  (*See* App'x at 32 (letter dated August 26, 2011 requesting appeal or reconsideration); *id.* at 30 (EOB dated September 6, 2011).)

For the November 18, 2010 procedure, a lumbar medial branch block, Atlantic Spinal submitted a claim for $9,400, consisting of three charges under three codes: a charge for $800 under code 77003; a charge for $2,800 under code 64494, and a charge for $5,800 under code 64493.  (App'x at 224, 225, 227.)  As to the charge under code 77003, Aetna determined that no payment was due because the plan "provides coverage for charges that are reasonable and appropriate as determined by Aetna," and the service was "considered incidental to another procedure performed on the same date of service."  (*Id.* at 225.)  As to the other two charges, Aetna paid a total of $157.64, stating that the plan provided benefits "for covered expenses based on recognized charges, as determined by Aetna," for that service, and these charges exceeded

that amount.  (*Id.*)  Atlantic Spinal requested an appeal or reconsideration of the payment amount

in January 2011 (and, based on the date of the first response in the record, had done so at least

once before).  (*See* App'x at 226, 229.)  However, Aetna adhered to its decision.  (*Id.* at 229-30.)

In a letter dated January 12, 2011, Aetna stated that "per the members policy, it states out of

network fee schedule for medical services we should be using the Aetna Market Fee Schedule

(REF rate) therefore your claim was priced correctly." (*Id.* at 229 (errors in original).)  The letter

continued: "On 12/07/2010, we paid these services according to the member's plan benefits.  The

claim was processed under Aetna's Open Access Managed Choice plan . . . . Therefore, our

previous decision stands, and no further payment is due." (*Id.*)  Subsequently, Aetna sent

another letter about this claim, stating in substance:

> This letter is in response to your request for a review of our benefits decision for
> services rendered on 11-18-2010 for the Aetna member listed above.
>
> Following our review, we have determined that this member's group benefits
> coverage allows the claim in reference was processed correctly to allow an
> amount of $157.64, as per the contract[.]
>
> Our records indicate that we processed this claim according to the provisions of
> this individual's plan.  On 12-07-2010, we paid these services according to the
> plan contract.  Therefore, our previous decision stands, and no further benefits are
> due.
>
> (*Id.* at 230.)

Both letters stated that Atlantic Spinal could appeal if it did not agree with the decision.

(*Id.* at 229-30.)

On March 4, 2011, Atlantic Spinal performed a bilateral rhizotomy[4] on M.G. with respect

to lumbar facets L-4, L-5, and S-1.  (DSMF ¶ 28; App'x at 63.)  For this service, Atlantic Spinal

---

[4] A rhizotomy is a section (cutting) of spinal nerve roots for pain relief.  Stedman's Medical
Dictionary 1692, 1739 (28th ed. 2006).

submitted two sets of payment claims to Aetna, one for Dr. Liu's services (the "Dr. Liu claim") and one for Dr. Aranas's services (the "Dr. Aranas claim").  For Dr. Liu, the principal surgeon, Atlantic Spinal submitted a claim for payment of $94,800, comprised of four amounts under three service codes.  (DSMF ¶ 22; App'x at 36, 45, 61.)  More specifically, the Dr. Liu claim consisted of a charge under service code 77003 for $800, a charge under code 63190 for $28,000, and two charges under code 63185 for $33,000 each.  (App'x at 61; DSMF ¶ 23.)

For the Dr. Aranas claim, Atlantic Spinal submitted a claim for payment of $94,000, comprised of three amounts under two service codes.  (App'x at 38.)  More specifically, the claim consisted of a charge under code 63190 for $28,000, and two charges under code 63185 for $33,000 each.  (*Id*; DSMF ¶ 24.)  The claim billed for Dr. Aranas as the assistant surgeon. (DSMF ¶ 26.)

As to the Dr. Aranas claim, with respect to the charge under code 63190, which indicates that the service provided was a "[l]aminectomy with rhizotomy" on more than two segments, Aetna determined that $208.22 was covered, but within the patient's deductible.  (App'x at 53; Ex. to Kelly Decl. in Supp. of Mot. Summ. J. ("Kelly Decl.").)  Aetna calculated this amount based on the plan's coverage for "charges that are reasonable and appropriate as determined by Aetna," and "Aetna's guidelines for multiple procedures and services performed on the same date of service."  (App'x at 53.)  For the charges under code 63185, which indicates the same procedure on one or two segments, Aetna stated that the plan did not provide coverage "because this service is considered mutually exclusive to another procedure performed on the same date of service."  (*See* DSMF ¶ 25; App'x at 53; Ex. to Kelly Decl.)

As to the Dr. Liu claim, an EOB attached to the complaint indicates that payment was allowable in the amount of $26.73 on the claim under code 77003 and in the amount of

$1,301.35 on the claim under code 63190 (the "more than two segments" procedure).  (D.E. 26-4 (Ex. C to Compl.).)  The charges were based on Aetna's "recognized charges" for those services.  (*Id.*)  Both amounts were, however, within M.G.'s deductible, such that Aetna was not obligated to pay Atlantic Spinal.  The charges under the code for the "one or two segments" procedure were denied as having been previously billed by another provider.  (*Id.*)

Aetna adhered to its determination over Atlantic Spinal's requests for reconsideration and appeals.  (DSMF ¶¶ 27, 30-33.)

Atlantic Spinal sued Aetna on September 18, 2012, in state court.  (D.E. 1-3 ("Compl.").)[5]  The complaint alleges that, as detailed above, Atlantic Spinal treated M.G. (who had executed an assignment in its favor) on four dates from October 2010 to March 2011.  (Compl. ¶¶ 5-6.)  Notwithstanding Atlantic Spinal's request for reimbursement of, in total, $209,700 for the services it provided, the complaint alleges Aetna paid only $1,732.13.  (Compl. ¶¶ 7-8.)  The complaint seeks the remaining balance Atlantic Spinal claims it is due: $207,967.87.  (Compl. ¶¶ 9-10.)  It also seeks statutory penalties for Aetna's purported failure to provide a copy of M.G.'s plan.  (Compl. ¶¶ 27-31.)

The complaint asserts three causes of action, two under ERISA and one state law breach of contract claim, and seeks relief in the form of damages, statutory penalties, interest, attorneys' fees, and costs.  Count 1 asserts entitlement to payment of benefits under a breach of contract theory.  Count 2 asserts a claim under ERISA for payment of benefits under M.G.'s plan. Count 3 alleges that Aetna did not supply a copy of the member plan or policy for M.G. in violation of ERISA disclosure requirements.

---

[5] In filing the complaint on this Court's docket with its notice of removal, Aetna omitted the exhibits that accompanied the complaint in state court.  At the Court's request, Aetna provided a complete copy of the complaint on March 18, 2014.  (*See* D.E. 25; D.E. 26.)

Aetna filed a notice of removal of the action on October 26, 2012.  (D.E. 1.)  It filed an answer the same day [D.E. 2], and an amended answer on January 31, 2013 [D.E. 7].

Aetna has now moved for summary judgment [D.E. 12], relying on a brief [D.E. 12-2 ("Def. Br.")], its statement of material facts, its attorney's declaration [D.E. 12-4 ("Kelly Decl.")], and an appendix containing, *inter alia*, the administrative record and M.G.'s plan. Atlantic Spinal opposed, relying on a brief [D.E. 15; D.E. 16-2 ("Pl. Br.")], in which it included its response to Aetna's statement of material facts,[6] and cross-moved to amend its complaint to add a claim for breach of fiduciary duty.  Aetna filed a reply brief, including in it a "counterstatement of facts in opposition to plaintiff's motion to amend" the complaint and its opposition to the cross-motion.  (D.E. 17 ("Def. Reply Br.").)

## III.   **Discussion**

### A.  **Summary Judgment Standard**

Aetna has moved for summary judgment in its favor on all three counts of the complaint. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing substantive law." *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  And "[a] dispute is 'genuine' if, based on the evidence in the record, a reasonable jury could return a verdict for the non-moving party."  *Taliaferro v. Trump Entm't Resorts, Inc.*, No. 12-3883, 2013 WL 6498066, at *7 (D.N.J. Dec. 11, 2013) (Simandle, J.) (citing *Anderson*, 477 U.S. at 248).  If the record, as a

---

[6] Under the Local Rules, this response should have been set out in a separate document. L. Civ. R. 56.1(a).

whole, would not permit a rational factfinder to find in favor of the nonmoving party, "there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  In evaluating the parties' arguments, the court "view[s] the facts in the light most favorable to the non-moving party and make[s] all reasonable inferences in that party's favor." *Scheidemantle*, 470 F.3d at 538.

"To demonstrate that no material facts are in dispute, the moving party must show that the non-moving party has failed to establish one or more essential elements of his or her case." *Id.*  "'Only evidence sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case merits consideration beyond the Rule 56 stage.'"  *Lauren W. ex rel Jean W. v. DeFlaminis*, 480 F.3d 259, 266 (3d Cir. 2007) (alteration in original) (quoting *In re Ikon Office Solutions, Inc.*, 277 F.3d 658, 666 (3d Cir. 2002)).

Unsupported allegations are insufficient for the non-moving party to defeat a summary judgment motion.  "'[T]he party opposing the motion must go beyond its pleading and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial.'" *Lauren W.*, 480 F.3d at 266 (quoting *Ikon, Inc.*, 277 F.3d at 666).  *See also Corliss v. Varner*, 247 F. App'x 353, 354 (3d Cir. 2007) (per curiam) (non-precedential) (quoting *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003)) ("When opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'").

### B.  Count 1

In count 1, Atlantic Spinal asserts that Aetna did not pay the full amount of benefits due under M.G.'s plan, benefits to which it claims entitlement by virtue of M.G.'s assignment.

Aetna contends that this count, which is captioned as a breach of contract claim, is preempted by ERISA. The parties agree that M.G.'s plan is indeed governed by ERISA. (DSMF ¶ 2; Pl. Br. 1, ¶ 2.) For the reasons below, the Court finds that this claim is preempted and cannot proceed.

ERISA was enacted "'to ensure the proper administration of pension and welfare plans, both during the years of the employee's active service and in his or her retirement years.'" *Nat'l Sec. Sys. v. Iola*, 700 F.3d 65, 81 (3d Cir. 2012) (quoting *Boggs v. Boggs*, 520 U.S. 833, 839 (1997)). It "aims to 'provide a uniform regulatory regime over employee benefit plans' in order to ease administrative burdens and reduce employers' costs." *Id.* at 82 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004)). One way it sets out to accomplish this goal and "ensure that plan regulation resides exclusively in the federal domain" is through the preemption statute found at § 514(a), 29 U.S.C. § 1144(a). *Id. Accord New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 657 (1995) ("The basic thrust of the pre-emption clause . . . was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans.").

Section 514(a) is "paired . . . with § 502(a) [29 U.S.C. § 1132(a)], which enumerates a set of integrated civil enforcement remedies designed to redress violations of the statute or the terms of a plan." *Iola*, 700 F.3d at 82. Under the latter, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Davila*, 524 U.S. at 209. Thus, ERISA contains both an express preemption provision and "a comprehensive civil enforcement scheme that preempts any conflicting state remedy." *Iola*, 700 F.3d at 83.

9

The express preemption provision, § 514(a), supersedes, with certain exceptions not raised here, "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a).[7]  The Supreme Court has accorded a "broad common-sense meaning" to the term "relate to," under which a state law "relates to" a benefit plan "if it has a connection with or reference to such a plan."  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987) (citation omitted).  Applying this standard has proven challenging and its breadth has been narrowed since the Supreme Court's early decisions in this area.  *See, e.g.*, *Travelers*, 514 U.S. at 655-56 (noting difficulty of defining "relates to" terminology, and finding state law not preempted); *Kollman v. Hewitt Assocs., LLC*, 487 F.3d 139, 147 (3d Cir. 2007) (suggesting "[i]t is no secret to judges and lawyers that the courts have struggled with the scope of ERISA preemption"). Ultimately, whether a state law is preempted under § 514(a) is to be determined "in light of the purpose underlying § 514(a) and, of course, the applicable precedents" of the Supreme Court and Third Circuit.  *Kollman*, 487 F.3d at 147-48.  *See also Travelers*, 514 U.S. at 656 (looking to "objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive"); *Pilot Life*, 481 U.S. at 45 (noting that "whether a certain state action is pre-empted by federal law is one of congressional intent" and that "[t]he purpose of Congress is the ultimate touchstone") (citations and internal quotation marks omitted). Examination of such precedent, in light of congressional intent to provide a unified federal regulatory regime for employee benefit plans, reveals that state law breach-of-contract claims based on allegations that benefits are owed under an ERISA-regulated plan are expressly preempted by § 514(a).

---

[7] "The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). "State common law claims fall within this definition and, therefore, are subject to ERISA preemption." *Iola*, 700 F.3d at 83.

The Third Circuit's decision in *Kollman* is instructive on the scope, and strength, of § 514(a)'s preemptive force.  There, the plaintiff sought to determine the pension sum he would be entitled to under his company's retirement plan.  *Id.* at 140.  He requested the information from a website maintained by defendant Hewitt Associates, which handled most administrative services for the plan.  *Id.* at 140-41.  The website provided an incorrect figure, and the plaintiff, who had retired, sued Hewitt for, *inter alia*, professional malpractice.  Noting that "the purpose of the ERISA preemption is to eliminate claims that would interfere with the ERISA plans," the Third Circuit upheld the dismissal of this claim as preempted, noting that the claim "goes to the essence of the function of an ERISA plan--the calculation and payment of the benefit due to a plan participant."  *Id.* at 149-50.  The Court drew a distinction between, on the one hand, the type of claim before it, which lies at the core of ERISA and the resolution of which would require reference to the plan and which is "plainly preempted," and on the other hand "general state enforcement mechanisms [that] can be used to reach a participant's benefits," including "'run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan,'" which do not "interfere with the essential role of the ERISA plan" and are not preempted.  *Id.* at 149-50 (quoting *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 833 (1988)).

Atlantic Spinal's breach of contract claim, which asserts that payment is due under the terms of M.G.'s plan, lies in the realm of the "plainly preempted."  It is about the "calculation and payment of the benefit due" and requires the existence of the plan and reference to its terms.  *See Kollman*, 487 F.3d at 149-50; *see also Iola*, 700 F.3d at 84 (common law claims preempted as they had "'a connection with' the ERISA plans because they [were] premised on the existence of the plans").  Similar claims seeking recovery of benefits claimed due under ERISA-regulated

plans have met the same fate.  *See, e.g.*, *Pilot Life*, 481 U.S. at 48 (common law causes of action, which were "based on alleged improper processing of a claim for benefits under an employee benefit plan, undoubtedly [met] the criteria for preemption under § 514(a)"); *Ford v. Unum Life Ins. Co.*, 351 F. App'x 703, 706 (3d Cir. 2009) (per curiam) (non-precedential) (affirming determination that state law claims, including breach of contract claim, were preempted where they related to a benefits plan governed by ERISA); *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 278 (3d Cir. 2001) (noting that "suits against HMOs and insurance companies for denial of benefits, even when the claim is couched in terms of common law negligence or breach of contract, have been held to be preempted by § 514(a)"); *Zahl v. Cigna Corp.*, No. 09-1527, 2010 WL 1372318, at *2-3 (D.N.J. Mar. 31, 2010) (Hayden, J.) (dismissing state law claims, including breach of contract claim, as preempted).

Atlantic Spinal, appearing to concede as much, seeks in its brief to "voluntarily dismiss" this count in the "interest of efficiency." (Pl. Br. 4-5.)  Even if a statement in a summary judgment opposition brief were a proper vehicle by which to voluntarily dismiss a claim, unilateral voluntary dismissal is no longer available to a plaintiff once a motion for summary judgment has been filed.  *See* Fed. R. Civ. P. 41(a)(1)(A).  Because this claim is expressly preempted, the Court will grant summary judgment in Aetna's favor on count 1 of the complaint.[8]

---

[8] Because Atlantic Spinal's breach of contract claim is preempted under § 514(a), the Court need not address preemption by virtue of § 502(a).  *See Iola*, 700 F.3d at 83 n.15 (describing the civil enforcement mechanism as "conflict preemption"); *Pryzbowski*, 245 F.3d at 270 (discussing "complete preemption, a jurisdictional concept based on § 502(a) of ERISA").  It suffices to note that state law claims are preempted under this rubric when they "fall within the scope of the federal causes of action provided in section 502(a) of ERISA," or, in other words, when they "could have been brought under that section."  *DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 446 (3d Cir. 2003).  Section 502(a)(1)(B) permits participants or beneficiaries to "recover benefits due" under the terms of the plan.  29 U.S.C. § 1132(a)(1)(B).  Assuming that Atlantic

### C.  Count 2

In count 2 of the complaint, Atlantic Spinal seeks the same remedy it did in count 1: payment of benefits under M.G.'s plan.  It also seeks attorneys' fees and costs.  Aetna contends that summary judgment is warranted on this claim because it properly evaluated Atlantic Spinal's claims under the terms of the plan.  Framed in the context of the summary judgment standard, Aetna's argument is that Atlantic Spinal cannot prove an essential element of its payment claim: its right to receive any payment beyond what it has already received.

Section 502(a)(1)(B) of ERISA permits a participant or beneficiary to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  Asserting a claim under this statute requires the beneficiary or participant to "demonstrate that 'he or she . . . ha[s] a right to benefits that is legally enforceable against the plan,' and that the plan administrator improperly denied those benefits."  *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (quoting *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006)).

In evaluating a claim under § 502(a)(1)(B), the district court is to review the administrator's benefits determination *de novo* "'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'"  *Fleisher*, 679 F.3d at 120 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  If the plan does confer discretion, the court reviews the benefits denial using an "arbitrary and capricious" standard, which in the ERISA context is identical to review

---

Spinal has standing under § 502(a)(1) on the basis of M.G.'s assignment, an issue no party addresses, not only *could* it bring its breach of contract claim under § 502(a)(1)(B), it *has* – in count two.  Counts one and two both seek recovery of benefits due under M.G.'s plan, which, as noted earlier, the parties agree is governed by ERISA.

for abuse of discretion.  *Id.* at 120-21 & n.2.  Under this standard, "[a]n administrator's decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law."  *Id.* at 121 (quoting *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011)) (internal quotation marks omitted).  "The arbitrary and capricious standard applies to both findings of fact and matters of plan interpretation."  *Verme-Gibboney v. Hartford Life & Accident Ins. Co.*, No. 11–3796, 2014 WL 1050618, at *4 (D.N.J. Mar. 13, 2014) (Bumb, J.) (citing *Fleisher*, 679 F.3d at 121). The court's review is narrow, and it cannot substitute its own judgment for the administrator's judgment regarding eligibility; instead, "the plaintiff retains the burden to prove that he is entitled to benefits, and that the plan administrator's decision was arbitrary and capricious."  *Lima v. Aetna Life Ins. Co.*, No. 12-7770, 2013 WL 6903946, at *6 (D.N.J. Dec. 31, 2013) (Hillman, J.).

In applying the standard, the court examines "'procedural factors underlying the administrator's decision-making process'" – that is, it assesses "'how the administrator treated the particular claimant'" – as well as "'structural concerns'" related to the funding of the plan. *Bluman v. Plan Adm'r & Trs.*, 491 F. App'x 312, 314 (3d Cir. 2012) (non-precedential) (quoting *Miller*, 632 F.3d at 845).  As to the latter, if the entity that administers the plan determines eligibility for benefits and pays the benefits from its own funds, the court considers this conflict of interest as a factor in whether the benefits decision constituted an abuse of discretion.  *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008).  The significance of the conflict depends upon context; for example, a "history of biased claims administration" weighs more heavily than conflicts neutralized by the presence of internal control measures, such as screening between personnel.  *Id.* at 108, 117.

In count 2, Atlantic Spinal has sought to "recover benefits due" under M.G.'s plan, thereby challenging Aetna's payment determinations.  (*See* Compl. ¶¶ 19-24; 29 U.S.C. § 1132(a)(1)(B).)  The Court will apply the "arbitrary and capricious" or "abuse of discretion" standard to review those determinations because M.G.'s plan, read as a whole, confers discretion on Aetna to make various coverage and payment determinations.[9]  For example, Aetna determines (and can change, based on its "ongoing reviews") what services and supplies will be covered under the plan, and Aetna decides what is not "medically necessary" and therefore excluded from coverage.  (App'x at 130, 165.)  Aetna also requires and makes decisions on whether to grant precertification for certain procedures; chooses, in its discretion, whether medical equipment can be rented or purchased; explains that coverage for experimental treatment depends in part on whether it determines that the member would likely benefit; and has the discretion to impose limits on prescription drug coverage and make determinations on reimbursements for prescriptions.  (*Id.* at 132-34, 148, 172-73.)  And, as explained further below, Aetna also has the authority to determine what charge is appropriate to pay as a covered benefit for out-of-network services.  (*See* App'x at 208 (defining "recognized charge").)

Albeit the plan lacks a clause summarizing the scope of Aetna's discretion, a grant of discretion can be express or implied and does not depend on "magic words."  *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011).  *See also id.* at 417 (quoting *Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635, 639 (7th Cir. 2005) (stating that "[t]o be insulated from *de novo*

---

[9] Aetna invokes this standard of review in its brief [Def. Br. 5-6], and Atlantic Spinal does not challenge it.  In fact, Atlantic Spinal, in its proposed amended complaint, explicitly invokes Aetna's "discretionary authority or control to deny the payment and to manage the administration of the employee benefit plan at issue" as the basis for alleging it is a fiduciary under ERISA.  (D.E. 16-1 ("Prop. Am. Compl.") ¶ 33.)

review, a plan must 'communicate the idea that the administrator not only has broad-ranging authority to assess compliance with pre-existing criteria, but also has the power to interpret the rules, to implement the rules, and even to change them entirely'").  The Court is satisfied that even if Aetna's discretion does not extend to *all* decisions regarding benefits, it does extend to the matters at issue here -- namely, the amount payable to Atlantic Spinal, which encompassed determining whether the plan provided coverage for a service and the amount of reimbursement to which Atlantic Spinal was entitled under rates that Aetna determined to be proper.

Applying this standard to Atlantic Spinal's claim for additional payment, the Court concludes that Aetna did not abuse its discretion.  As an initial matter, Atlantic Spinal simplistically claimed in its complaint that Aetna owed it the outstanding amount between the total sum Atlantic Spinal billed for the four dates and what Aetna (purportedly) paid.  In opposing summary judgment, it does not support this claim, and instead argues that Aetna breached its fiduciary duty – a claim it seeks now to add to the complaint.  By side-stepping this way, Atlantic Spinal fails to carry its burden to "prove that [it] is entitled to benefits, and that the plan administrator's decision was arbitrary and capricious."  *Lima*, 2013 WL 6903946, at *6.

The Court has reviewed the record nevertheless, and concludes that it fails to establish a genuine dispute of material fact precluding summary judgment.  Aetna acted consistently with the unambiguous terms of M.G.'s plan, and this is what is required.  *Funk v. Cigna Grp. Ins.*, 648 F.3d 182, 192 (3d Cir. 2011) (quoting *Bill Gray Enters., Inc. Emp. Health & Welfare Plan v. Gourley*, 248 F.3d 206, 218 (3d Cir. 2001)) ("'If the terms are unambiguous, then any actions taken by the plan administrator inconsistent with the terms of the document are arbitrary. But actions reasonably consistent with unambiguous plan language are not arbitrary.'").

The plain language of the plan makes clear that services are paid differently when rendered by out-of-network providers versus in-network providers.  (*See, e.g.*, App'x at 129 ("The plan pays benefits differently when services and supplies are obtained through network providers or out-of-network providers.").)  The plan also makes clear that any payment of benefits is subject to the "terms, policies and procedures" therein.  (*Id.*)  As a threshold matter, benefits are only available for services deemed "covered expenses that are medically necessary." (App'x at 129, 136.)  Further, a provider is not entitled to payment in any amount it chooses to bill; instead, the plan explains that the following procedure applies with respect to payment for out-of-network benefits:  First, the plan member must "satisfy any applicable deductibles before the plan will begin to pay benefits."  (App'x at 132.)  For M.G.'s plan, the out-of-network calendar-year deductible is $4,000.  (DSMF ¶ 7; App'x at 106 (Schedule of Benefits); App'x at 132, 197 (referring reader to Schedule of Benefits).)

Once the deductible is met, the member is "responsible for any applicable coinsurance for covered expenses" that are incurred.  (App'x at 132.)  "Coinsurance" is defined both as the percentage of covered expenses that the plan will pay (the "plan coinsurance"), and the percentage the member will pay.  (App'x at 196.)  The plan coinsurance for surgical procedures[10] is 70% of the "recognized charge."  (App'x at 111, 132.)  If the provider decides to charge *more* than the recognized charge, the member is responsible for amount above the recognized charge. (App'x at 132.)  Thus, to recap, once M.G. has met the $4,000 calendar year deductible, Aetna will pay for 70% of what it determines to be the "recognized charge" for a surgical procedure, if the plan provides that the procedure is a covered expense that is medically necessary.

---

[10] Aetna references the coinsurance percentages for surgical procedures [DSMF ¶ 8], and Atlantic Spinal does not contend that its treatment of M.G. should be classified under a different category within the Schedule of Benefits [*see* Pl. Br. 1, ¶ 8].

The plan further explains that "[o]nly that part of a charge which is less than or equal to the recognized charge is a covered benefit."  (App'x at 208.)  The "recognized charge," in turn, is defined as the lowest of:

The provider's usual charge for furnishing [the service or supply]; and

The charge Aetna determines to be appropriate, based on factors such as the cost of providing the same of a similar service or supply and the manner in which charges for the service or supply are made, billed or coded; or

  a. For non-facility charges: Aetna uses the Aetna Market Fee Schedule (AMFS).
  b. For facility charges: Aetna uses the charge Aetna determines to be the usual charge level made for it in the geographic area where it is furnished.

(*Id.*)

To determine the "recognized charge" for services and supplies that are unusual, not often provided in the geographic area, or provided only by a small number of providers in the geographic area, Aetna can take into account various factors, such as complexity, the skill necessary, the provider's specialty, the range of services or supplies a facility provides, and the recognized charge in other geographic areas.  (*Id.*)  Finally, in the event Aetna has an agreement with a provider to pay at a certain rate, the recognized charge will be the rate in that agreement, rather than the charge Aetna determines based on the above formula.  (*Id.*)

To summarize, the member must meet a $4,000 deductible per year.  Then, if the surgical procedure he receives is a covered expense that is medically necessary, Aetna will pay 70% of what it determines to be the recognized charge based on the formula described above, or based on the rate in any agreement with the provider, if one exists.  Thus, only after the foregoing conditions are satisfied will Aetna be obligated to pay anything to Atlantic Spinal, and the amount it is responsible to pay, having been based on the "recognized charge," need not be what the out-of-network provider has billed for the service.

For the October 4, 2010 and October 18, 2010 claims and for two of the three November 18, 2010 charges, Aetna made payment to Atlantic Spinal for all billed charges in the amount of the "recognized charge." This is all that the plan requires. By asking for more money, Atlantic Spinal essentially challenges the rates of reimbursement used without providing the Court with any reason or authority to do so. Atlantic Spinal presents no agreement with Aetna regarding rates or payment, notwithstanding its form appeal letters' request that Aetna reevaluate the allowable amount "based on the benefit under the member's **out of the network contract**." [*See, e.g.*, App'x at 13 (emphasis in original).] Rather, the parties agree that Atlantic Spinal is an out-of-network provider [DSMF ¶ 5; Pl. Br. 1, ¶ 5], and by the plan's definition, Atlantic Spinal is a provider that does not have a contractual agreement with Aetna regarding rates [App'x at 205]. Although the plan does permit the recognized charge to be based on an agreement between the provider and Aetna [App'x at 208], there is no evidence or allegation that any such an agreement exists here.

For the remaining November 18, 2010 charge, Aetna denied payment because the service associated with it was considered incidental to another procedure, and therefore no coverage was available because it was not a "reasonable and appropriate" charge in Aetna's determination. Aetna has the discretion to make decisions regarding whether services are covered by the plan and medically necessary. Atlantic Spinal has not suggested why that discretion was abused here.

For the March 4, 2011 service, while the record the Court has been provided is not a model of clarity, it shows that Aetna determined Dr. Aranas's claim for the "more than 2 segments" type of laminectomy was payable at $208.22, and that Dr. Liu's charges for the same procedure were payable at $1,301.35 (along with $26.73 for the charge under code 77003), but that these amounts fell within M.G.'s deductible. Aetna's setting of the allowable amount based

on what was a "reasonable and appropriate" charge and on its "guidelines for multiple procedures and services performed" on the same day, for the Dr. Aranas claim, was within its discretion, as was its decision not to provide payment above recognized charges for the Dr. Liu claim. Moreover, the denial of payment to either doctor for the services associated with code 63185, the "one or two segment" laminectomies, was not an abuse of discretion given that both doctors also sought payment for the "more than two segments" laminectomy. Not only is this supported by logic, Atlantic Spinal offers no argument why Aetna was wrong in so deciding. Nor was Aetna's application of the $4,000-per-calendar-year deductible for out-of-network benefits, which is unambiguously stated in the schedule of benefits.[11]

Atlantic Spinal argues in its opposition brief that there is a genuine dispute of material fact regarding whether Aetna, by failing to disclose its data or methodology for determining allowable amounts, nonetheless provided the full and fair review of denied claims required by § 503 of ERISA, 29 U.S.C. § 1133. (Pl. Br. 10-11.) It is unclear what count of the complaint this argument pertains to, and it appears Atlantic Spinal makes this argument in support of its newly-asserted fiduciary duty claim. However, to the extent that compliance with § 503 can be probative as to whether a benefits denial was an abuse of discretion, *Miller*, 632 F.3d at 851, the Court notes that Atlantic Spinal claims in a general sense that the written EOB form "was uninformative, false and misleading" because it didn't have "the methodology or source data" for the recognized charge amount. (Pl. Br. 11.) Such disclosure is not required. *See* 29 U.S.C.

---

[11] From the information Atlantic Spinal has provided, it appears that it was paid a total of $1,732.13, an amount it does not attempt to explain, either in the complaint or elsewhere. The Court has examined the record and is satisfied that $1,732.13 is the sum of the amounts allowed for the first three dates of service, along with the amount reflected on the March 29, 2011 EOB as payable for the 63190-coded procedure billed by Dr. Liu. In choosing not to go into this level of detail while at the same time seeking redress from this Court for Aetna's supposed deficiencies, Atlantic Spinal undercuts its arguments.

§ 1133; 29 C.F.R. § 2560.503-1(g); *Franco v. Conn. Gen. Life Ins. Co.*, 818 F. Supp. 2d 792, 823 (D.N.J. 2011) (Chesler, J.).  This argument does not, therefore, suggest a problem in the procedure Aetna followed in processing Atlantic Spinal's claims.

With respect to the "structural" concerns forming part of the Court's assessment, because Aetna both makes eligibility determinations and, it appears from its status as benefit provider and underwriter [*see* DSMF ¶ 3; App'x at 118, 122], pays benefits under that plan, Aetna has a conflict of interest of the sort addressed in *Glenn*.  However, "there is nothing to suggest that [it] was laboring under a *meaningful* conflict of interest," and the Court declines to conclude that this conflict merits finding – or even favors finding – an abuse of discretion in the absence of more. *See Funk*, 648 F.3d at 193 (finding that district court should not have accorded the "significant weight" it appeared to give "a largely hypothetical conflict").

As Atlantic Spinal cannot establish its entitlement to additional payment of benefits, summary judgment in Aetna's favor on this claim is warranted.

### D.  Count 3

Atlantic Spinal's third count alleges that Aetna failed to provide it with a copy of M.G.'s plan or policy upon request.  (Compl. ¶¶ 27-30.)  For this alleged violation Atlantic Spinal seeks statutory penalties of $110 per day of Aetna's non-compliance, along with damages, interest, attorneys' fees, and costs.  Aetna argues that any such request should have been directed to ADP TotalSource, Inc., the plan administrator, and that, in any event, Atlantic Spinal has provided no proof that it even *made* a written request for documentation. The Court agrees that summary judgment is warranted on this count.

The complaint invokes "Section 502(a)(1), codified at 29 U.S.C. 1132(a)" as the ground for a claim "for a beneficiary or participant seeking damages for an administrator's refusal to supply requested information."  (Compl. ¶ 27.)  Based on the relief sought (statutory penalties)

and the type of violation alleged (failure to provide certain requested information), the Court

discerns that Atlantic Spinal is asserting a claim based on § 502(a)(1)(A) and (c)(1)(B).  Section

502(a)(1)(A) permits participants and beneficiaries to sue for the relief available under § 502(c).

*See* 29 U.S.C. § 1132(a)(1)(A).  Section 502(c)(1)(B), in turn, provides that:

> Any administrator. . . who fails or refuses to comply with a request for any
> information which such administrator is required by this subchapter to furnish to a
> participant or beneficiary (unless such failure or refusal results from matters
> reasonably beyond the control of the administrator) by mailing the material
> requested to the last known address of the requesting participant or beneficiary
> within 30 days after such request may in the court's discretion be personally liable
> to such participant or beneficiary in the amount of up to $100 a day[12] from the
> date of such failure or refusal, and the court may in its discretion order such other
> relief as it deems proper.

29 U.S.C. § 1132(c)(1)(B).

Atlantic Spinal contends that the information it sought and was not provided is M.G.'s

plan.  Section 104(b)(4) of ERISA addresses the requirement that plan documentation must be

provided to beneficiaries and participants upon request.  *See* 29 U.S.C. § 1024(b)(4); *see also* 29

U.S.C. § 1022(a) (requiring that summary plan description "be furnished to participants and

beneficiaries as provided in [29 U.S.C. § 1024(b)].").  It provides that "[t]he administrator shall,

upon written request of any participant or beneficiary, furnish a copy of the latest updated

summary plan description . . . or other instruments under which the plan is established or

operated."  29 U.S.C. § 1024(b)(4).  "To establish a violation under that section, [the plaintiff]

must establish that [it] made a written request to the plan administrator . . . and that the

administrator failed to respond within thirty days."  *Kollman*, 487 F.3d at 144.

---

[12] The penalty was increased to $110 per day for violations occurring after July 29, 1997.  29
C.F.R. § 2575.502c-1.

At the outset, the record demonstrates that Aetna is not the plan administrator for M.G.'s plan. ERISA defines the term "administrator" as (i) the person designated as such by the "instrument under which the plan is operated"; (ii) the plan sponsor, if the plan does not specify the administrator; or (iii) "in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe." 29 U.S.C. § 1002(16)(A). The "plan sponsor" is

> (i) the employer in the case of an employee benefit plan established or maintained by a single employer, (ii) the employee organization in the case of a plan established or maintained by an employee organization, or (iii) in the case of a plan established or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan.

29 U.S.C. § 1002(16)(B).

The summary plan description lists ADP TotalSource, Inc. as the plan administrator. (App'x at 216.) Even if this designation were insufficient to identify the plan administrator for purposes of § 1002(16)(A), the record is clear that ADP TotalSource, Inc. is the employer, and therefore the plan sponsor, for M.G.'s plan. (*See, e.g.*, App'x at 106.) Accordingly, "as [Aetna] is not the administrator, it cannot be held liable under 29 U.S.C. § 1132(c)(1)(B)." *Cohen v. Horizon Blue Cross Blue Shield of N.J.*, No. 13-3057, 2013 WL 5780815, at *9 (D.N.J. Oct. 25, 2013) (Linares, J.).

Even assuming § 104(b)(4) could be construed to require Aetna to provide a copy of the plan upon request, and further assuming that Atlantic Spinal, as assignee, can invoke § 502(c)(1)(B) and § 104(b)(4) – which speak in terms of the rights of "participants" and "beneficiaries" to receive information on request – Atlantic Spinal points to no evidence that it actually *made* such a request. Atlantic Spinal asserted in the complaint that it requested a copy

of the plan [Compl. ¶ 29], but provides no evidentiary support for that assertion, or even any

information about how or when it made a request.  In fact, the thrust of its opposition is that

Aetna had an obligation to provide Atlantic Spinal with documents as a matter of fiduciary duty,

even though Atlantic Spinal didn't ask for them.  (*See* Pl. Br. 8-9 (arguing that Aetna had an

obligation as fiduciary to provide "the policy, SPD and schedule of benefits" prior to the

initiation of the lawsuit "despite the fact that Plaintiff *did not send a specific written request for

these documents* until the Complaint was filed" (emphasis added); *id.* at 4 (contending that Aetna

"breached its duty of loyalty by refusing to provide beneficiary with the plan documents and . . .

should have known that Plaintiff required the Summary Plan Description . . . in order to

understand Aetna's payment of the claims," and that "[i]t is ridiculous for Defendant to contend

that it did not have an obligation to provide Plaintiff with the Plan Documents, even if Plaintiff

did not specifically request the documents, in writing, prior to this litigation").)  These

allegations form the basis of the claim for breach of Aetna's fiduciary duties that Atlantic Spinal

now seeks leave to add to its complaint, an argument discussed below, *see* Part E, *infra*, but they

fall short of demonstrating that Atlantic Spinal made a request for documentation as necessary

for an award of statutory penalties or other relief under § 502(c)(1)(B).  Review of the

administrative record provided by Aetna in support of its motion for summary judgment likewise

reveals no written request for the plan or other plan documentation.

In *Kollman*, the Court considered the specificity of notice required to trigger a plan

administrator's duty to furnish documents under § 104(b)(4), concluding that "the touchstone is

whether the request provides the necessary clear notice to a reasonable plan administrator of the

documents which, given the context of the request, should be provided."  487 F.3d at 146.

Without any request at all, Atlantic Spinal does not even approach satisfying this standard and

therefore cannot succeed on its claim.  Accordingly, the Court will grant summary judgment in Aetna's favor on count three.

As noted earlier, in opposition to Aetna's motion, Atlantic Spinal contends that a genuine dispute of material fact remains regarding whether Aetna failed to discharge its obligation under § 503 of ERISA to provide a full and fair review of denied claims, a claim it alleges is cognizable under §§ 502(a)(1) and (c)(1).  (Pl. Br. 10-11.)  It does not tether this argument to a specific claim or count in its complaint.  To the extent Atlantic Spinal invokes § 502(c), the subject of the Court's foregoing discussion, its argument fails for the reasons just explained.

### E.  Atlantic Spinal's Cross-Motion

Atlantic Spinal has moved to amend its complaint to add a claim for breach of fiduciary duty based on Aetna's alleged (a) failure to "issue an Adverse Benefit Determination in accord with the requirements of ERISA and applicable regulations"; and (b) failure "to comply with Plaintiff's request for information and documents including but not limited to the 'Summary Plan Document' and the identification of the 'Plan Sponsor.'"  (D.E. 16-1 ("Prop. Am. Compl.") ¶ 34.)  Atlantic Spinal claims it has been prejudiced by the alleged breach "because it has not been able to identify the Plan Sponsor or to assess the application of the terms of the Summary Plan Document prior to asserting a claim for benefits under ERISA § 502(a)(1)(B) or to bring a claim for such benefits."  (*Id.* ¶ 35.)

Aetna argues that Atlantic Spinal cannot show damages, in that it cannot show that its treatment decision would have been different, so there can be no breach of fiduciary duty.  Aetna further notes that Atlantic Spinal made no request for the documents or information at issue, and in any event it had information about the plan sponsor and payment policies before filing its complaint.

The standard for evaluating motions to amend is a liberal one, in that, when leave of court is required to amend, such leave should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). But the Court may deny leave to amend in the event of the movant's "undue delay, bad faith or dilatory motive," "repeated failure to cure deficiencies by amendments previously allowed," undue prejudice to the non-moving party, or the amendment's futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Atlantic Spinal sought leave to add a claim for breach of fiduciary duty in response to Aetna's motion for summary judgment, claiming that it was an "oversight" that it did not include this "specific cause of action" in its complaint. (Pl. Br. 12.) Atlantic Spinal filed its complaint in state court in September 2012. Aetna answered the complaint in October 2012, and filed an amended answer on January 31, 2013 [D.E. 7].[13] Atlantic Spinal waited nearly four additional months beyond Aetna's filing of the amended answer – and until Aetna had filed its summary judgment motion – to seek leave to assert its new claim, which does not appear to be based on any information not available to Atlantic Spinal earlier.

Even if the procedural stage at which Atlantic Spinal made its motion did not raise concern, granting leave to amend would be futile. A proposed amendment is futile where, as amended, the complaint "'would fail to state a claim upon which relief could be granted.'" *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010) (quoting *In re Merck & Co. Sec., Derivative, & ERISA Litig.*, 493 F.3d 393, 400 (3d Cir. 2007)). This test for sufficiency governing motions to dismiss under Rule 12(b)(6) is used to assess

---

[13] The topic of amended pleadings appears to have been raised before then-Magistrate Judge Shwartz, whose pretrial scheduling order entered on January 30, 2013 [D.E. 6] expressly directed that Aetna file an amended answer by February 1, 2013. The scheduling order contemplated no further amendments. [*See id.* ¶ 10.]

whether a proposed amendment would be futile.  *Id.* (quoting *Shane v. Fauver*, 213 F.3d 113,

115 (3d Cir. 2000)).  Thus, the court must "'accept all factual allegations as true, construe the

complaint in the light most favorable to the plaintiff, and determine whether, under any

reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  *Fowler v. UPMC*

*Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d

224, 233 (3d Cir. 2008)).  "[M]ore than . . . unadorned, the-defendant-unlawfully-harmed-me

accusation[s]" are required, and to state a "plausible" claim, the claim must contain "sufficient

factual matter" to permit the court to reasonably infer that "the defendant is liable for the

misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

 As to Atlantic Spinal's allegation that Aetna breached its fiduciary duty by failing to

issue an adverse benefit determination ("ABD") in compliance with ERISA and "applicable

regulations," this contains insufficient factual matter for the Court to infer whether Aetna is

liable for any misconduct.  Atlantic Spinal challenges no ABD in particular, and fails to identify

the alleged shortcomings in what Aetna provided.  To the extent Atlantic Spinal's brief clarifies

that this allegation is based on violation of the "full and fair review" requirement under § 503,[14]

in that Aetna did not disclose "'recognized charge' data and/or methodology," this does not save

---

[14] Section 503 provides that:
> In accordance with regulations of the Secretary, every employee benefit plan shall--
>
>  (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
>  (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

> 29 U.S.C. § 1133.

its proposed claim.  As noted earlier, there is no requirement under either § 503 or the associated regulations found at 29 C.F.R. § 2560.503-1 that such data be provided.  *See Franco*, 818 F. Supp. 2d at 823.

With respect to Atlantic Spinal's allegation that Aetna breached its fiduciary duty by failing to comply with a request for documents, "including but not limited to" the "Summary Plan Document" and the identification of the plan sponsor, this too fails to state a claim for which relief can be granted.  It contains insufficient facts to permit the Court to draw an inference of liability: there is no information about when or under what circumstances the alleged request was made (and, in fact, Atlantic Spinal has admitted that no request was made). If no request was required, as Atlantic Spinal argues in its brief, the proposed amended complaint is also silent on what circumstances gave rise to the alleged duty on Aetna's part to provide the documents.

The asserted legal basis for Atlantic Spinal's proposed claim is also questionable. Having failed to establish its entitlement to relief for Aetna's purported disclosure violation as set out in count 3, Atlantic Spinal is now recycling the same alleged violation as a breach of fiduciary duty, and seeking the same, or an even more favorable, result.  It is particularly unconvincing to ask the Court to recognize an additional obligation incumbent on Aetna because Atlantic Spinal failed to do what the statute requires it to do in order to get the relief it seeks. The cases Atlantic Spinal relies on at pages 7 to 9 of its brief in support of its theory do not overcome the central deficiency of that theory – namely, that Atlantic Spinal is seeking to revive its failed claim under §§ 502(c)(1)(B) and 104(b)(4) by recharacterizing it as a breach of Aetna's fiduciary duties.

Furthermore, even if, as Atlantic Spinal argues in its brief, Aetna had, as a fiduciary, an obligation to disclose purportedly "material facts" (*i.e.*, plan documents with information about "recognized charges," once Atlantic Spinal showed that it "did not know [Aetna] did not utilize the UCR") that Atlantic Spinal needed, it is unclear how its mere references to "customary and reasonable" rates and the term "UCR" in its form appeal letters could serve to alert Aetna that – even though there is a mechanism for requesting precisely this information in 29 U.S.C. § 1024(b)(4) – it should have sent Atlantic Spinal copies of plan-related documents for M.G.'s plan.  To be clear, while there are undoubtedly situations in which information must be provided in the absence of a request, the scenario before the Court – a provider's routine, even predictable, request for additional payment at a level the provider considers reasonable – is not such a situation.

The form letter states that "ASC is confident that our fees are customary and reasonable for medical services provided within the geographic area" and that it "would like for [Aetna] to review and re-evaluate the allowable amount for the covered services based on the benefit under the member's out of the network contract."  (*See, e.g.*, App'x at 13.)  The form then cites a state Appellate Division case, references a provider-set "UCR," and indicates that insurers conduct a "reasonableness" review of this "UCR."  The Court disagrees that the use of "customary and reasonable" and "UCR" indicates that Atlantic Spinal misunderstood the use of the term "recognized charges" on the EOBs such that Aetna was put on notice that Atlantic Spinal had to be given a copy of the plan documents to protect its interests.  Rather, the language as a whole indicates an understanding that out-of-network benefits were provided and paid differently from in-network benefits under the governing plan; that limitations on payment may include

geographic factors, whether a service was covered, and reasonableness; and that Aetna would be reviewing submitted charges and setting payment rates within its discretion.

Accordingly, Atlantic Spinal's cross-motion seeking leave to amend its complaint will be denied.

**IV.**     **<u>Conclusion</u>**

For the foregoing reasons, the Court **GRANTS** Aetna's motion for summary judgment and **DENIES** Atlantic Spinal's cross-motion for leave to amend the complaint.  An appropriate order will issue.



/s/ Katharine S. Hayden
Date: March 31, 2014                                        Katharine S. Hayden, U.S.D.J.